IN THE MATTER OF PHILIP DEAN COHEN,
AN ATTORNEY AT LAW.

Argued February 23, 1971—Decided May 24, 1971.

*Mr. Paul Williams, Jr.* argued the cause for the Union County Ethics Committee.

*Mr. John T. Glennon* argued the cause for respondent (*Messrs. Weiner, Weiner & Glennon,* attorneys; *Mr. Glennon,* of counsel and on the brief).

PER CURIAM. This is a disciplinary matter. Respondent Philip Dean Cohen was charged before the Union County Ethics Committee with unethical conduct in transmitting a corrupt proposal to a member of the Bar in connection with a criminal prosecution to which we will presently refer. We issued the order to show cause now before us.

In September 1969, Theodore H. Simon was retained to represent five defendants charged with possession of marihuana under *N. J. S. A.* 24:18–4. Simon first appeared on behalf of these clients on October 7, 1969 before Judge John T. Soja in the Municipal Court of Elizabeth. At that appearance, Simon requested the court to accept a plea of guilty to a downgraded charge, namely, use of marihuana, a disorderly persons offense under *N. J. S. A.* 2A:170–8. Judge Soja indicated that he would accept such a plea, provided Simon obtained the consent of the Prosecutor's Office, and granted a two-week adjournment to allow Simon time to confer with the Prosecutor.

On October 21, 1969, Simon again appeared before Judge Soja, in chambers, and informed him that the Prosecutor's Office had recommended a reduction in the charges to use. After confirming Simon's representation, Judge Soja told Simon that he had discretion to accept the guilty plea, but that he intended to impose a heavy fine. Judge Soja testified that when Simon asked what the fine would be, he replied: "Up to $500." Simon said he understood Judge Soja to say the fine would be $500 for each defendant; and when Judge Soja asked whether defendants were prepared to accept sentence at that time, Simon asked for an opportunity to

discuss the matter with his clients, who were then waiting in the rear of the courtroom.

Following a short colloquy with his clients, Simon started to return to Judge Soja's chambers to tell him his clients did not have the wherewithal to pay a $500 fine at that time. On his way to Judge Soja's chambers, Simon was approached by respondent.

The following is Simon's version of what transpired. Respondent initiated a conversation, saying something to the effect, "Is the judge giving you a hard time?" Simon shrugged his shoulders. Respondent asked Simon what his fee was; Simon replied, "$500." Respondent thereupon offered: "For another $500 I think I can have the fines reduced to $250 apiece." In response to Simon's question, "Who does the $500 go to?", respondent simply said, "You're a smart boy, you should know better than to ask a question like that."

Respondent then left Simon and went through a doorway leading both to Judge Soja's chambers and to the office of the court clerk. Several minutes later he returned, telling Simon that it was all set and that he should ask Judge Soja to postpone the hearing on the guilty plea until October 31. Simon entered the Judge's chambers and requested and was granted a postponement until the 31st. Simon assumed Judge Soja was in complicity with respondent, and, for that reason, Simon did not inform the Judge of respondent's proposal. After Simon returned from the chambers, respondent gave Simon his business card; told Simon to give him the $500 on the morning of October 31 or a $500 fine would be imposed; and cautioned Simon to avoid "marked" bills. Simon went at once to the Prosecutor's Office and reported the incident.

Respondent admitted that he had talked to Simon on October 21, but denied that he had made the proposal related by Simon. Instead, respondent claimed that they had discussed only procedural matters, contending that he had simply offered to help Simon, a young attorney, with any

procedural problems he might encounter. Respondent denied requesting any money for his help; denied asking, being told, or being aware of the amount of the fine that Judge Soja had said he would or could impose; denied representing that he could get the fines reduced; and denied making comments like, "You're a smart boy, you should know better than to ask a question like that." Respondent specifically denied that he had entered either the clerk's office or Judge Soja's chambers, returned and told Simon to ask for a postponement, to pay him $500 on October 31, 1969, and not to have any marked bills.

The credibility of these denials, however, was severely undermined by other evidence in the case. On October 29, the Prosecutor's Office recorded, with Simon's permission, a telephone conversation between Simon and respondent. The pretext for the conversation was Simon's request of respondent for an additional one-week postponement so that defendants could raise the $500 fee demanded by respondent for exercising his influence. The transcript of that telephone conversation, the accuracy of which respondent conceded, revealed the following exchange:

> Simon: I am also wondering if it would be possible to get any kind of assurance that the Judge would go along with this and that I might * * *.
> Respondent: Don't ask that question will you. How do I know the line isn't tapped?
> Simon: Uh huh. I appreciate your concern.
> Respondent: We * * * er * * * let's put it this way. You retain me as associate Counsel. I have an objective and that objective is to get a fine in as little a sum as possible * * *.
> Simon: Uh huh * * *.
> Respondent: Somewhere near the area that we discussed * * *.
> Simon: Right.
> Respondent: It will be in that area.
> Simon: Yeh. My concern is that I don't want to be caught by surprise.
> Respondent: You won't.

In view of his earlier testimony that he had not discussed the subject of fines with Simon in their October 21 conversation, respondent could offer no credible explanation with

respect to this statement, "Somewhere in the area that we discussed."

We are convinced that respondent did unethically try to obtain money on the representation that he could improperly influence the administration of justice. Respondent's misconduct is, of course, serious. The committee, while finding respondent guilty of a violation of Canon 29, said it thought respondent's behavior could be explained by his "way of speaking and mannerisms." The record repels that version of the matter. The Committee adds that respondent has always been held in high respect by the members of the Bar during his 40 years of practice. We accept the Committee's appraisal in that regard, and we also accept the Committee's statement that respondent has contributed substantially to bar association and civic activities. Under all the circumstances, it is our judgment that respondent be suspended from the practice of law for two years and until further order of this Court.

It is so ordered.

*For suspension of two years*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.